UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------
AVROHOM P FRIED,
on behalf of himself and the class,                      Case No.: 12-cv-624- Judge Skretny

                        Plaintiff,
        v.


THE BANK OF CASTILE

                        Defendant.
-------------------------------------------------------

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR  FINAL APPROVAL OF CLASS ACTION SETTLEMENT


Plaintiff Avrohom P Fried ("Plaintiff"), through his undersigned counsel, files this Memorandum

in Support of his Motion for Final Approval of Class Action Settlement.

## I.

## BACKGROUND OF LITIGATION

Plaintiff filed an action on July 3, 2012, alleging that The Bank of Castile violated the Electronic

Funds Transfer Act , 15 U.S.C. § 1693 *et seq.* ("EFTA"). Specifically, Plaintiff alleges that

Defendant violated 15 U.S.C. § 1693b(d)(3)(C) which states, in relevant part:

(C) Prohibition on fees not properly disclosed and explicitly assumed by the consumer

No fee may be imposed by any automated teller machine operator in connection with any

electronic fund transfer initiated by a consumer for which a notice is required under

subparagraph (A), unless—

(i) The consumer receives such notice in accordance with subparagraph (B) . . . .

In turn, Plaintiff alleges that Defendant violated the notice requirement set forth at subparagraph B (15 U.S.C. § 1693(d)(3)(B)):

(B) Notice requirements

(i) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

The parties conducted informal discovery concerning the facts and class certification related matters. The parties, through counsel, then engaged in arms-length settlement negotiations. The parties ultimately executed a Class Action Settlement Agreement and Release ("Settlement Agreement") on or about October 24, 2012 [Doc. 13-1]. Pursuant to this agreement, the Parties have agreed to the certification of the following Class, for settlement purposes only:

All persons who used the automated teller machine operated by The Bank of Castile at 408 East Main Street in Batavia, New York between June 15th 2012 at 11am through July 17th 2012 at 8am, and who were charged a $3.00 transaction fee for the use of the automated teller machine.

On February 1, 2013, the Court entered Preliminary Approval Order [Doc. 21] certifying a class defined the same as the class in the settlement agreement:

All persons who used the automated teller machine operated by The Bank of Castile at 408 East Main Street in Batavia, New York between June 15, 2012 at 11 am, and July 17, 2012 at 8 am, and who were charged a $3.00 transaction fee for the use of the automated teller machine.

Thereafter, notice was provided to the class as required by the Preliminary Approval Order and the Settlement Agreement [Doc. 22].

No class members have filed objections to the settlement or opted out of the settlement.

## II.

## THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms: (1) Defendant created a settlement fund in the amount of $17,500.00 with $10,000.00 to be paid in attorney's fees and $1,000 to be paid to the plaintiff and $6,500 to be disseminated on a *pro rata* basis to every Participating Class Member who submits a claim after the dissemination of notice, with any individual Participating Class Member's share receiving that statutory maximum damages of $1,000.00.

(2) Defendant has also agreed that any unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis, to the Legal Aid Bureau of Buffalo, Inc.

## III.

## ANALOGOUS SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS HAVE BEEN ROUTINELY APPROVED

Federal District Courts have routinely approved analogous class settlements under the EFTA. For example, settlements similar to the one proposed in this case have been recently approved in the following cases: *Arthur v. Valwood Park Federal Credit Union,* No. 3:10-cv-00952-B (N.D. Tex); *Dragotta v. Northwest Bancorp, Inc.*, No. 09-cv-632 (W.D.Pa.) (Fischer, J.)(final approval granted); *Nolf v. Allegheny Valley Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.)(Bissoon, J.)(final approval granted); *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(Kennelly, J.)(final approval

granted); *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746, (N.D. Ill.)(Bucklo, J.)(final approval

granted); *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359, (N.D. Ill.)(Schenkier, J.)(final

approval granted); *Arbelo, et al. v. Charter One Bank*, 08-cv-1516, (N.D. Ill.)(Cox, J.)(final

approval granted).

**IV.**

**FINAL APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

The law favors settlement, particularly in class actions and other complex cases where

substantial resources can be conserved by avoiding the time, cost and rigor of prolonged

litigation. 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §11:41, at 90 (4th ed.

2002) (Courts usually adopt "an initial presumption of fairness when a proposed class settlement,

which was negotiated at arm's length by counsel for the class, is presented for court approval.").

Settlement agreements conserve judicial time and limit expensive litigation. 4 *Newberg on Class*

*Actions* §11:41, at 87 ("The compromise of complex litigation is encouraged by the courts and

favored by public policy."). A proposed class action settlement should be approved as long as it

is fair, adequate and reasonable and is not the product of collusion between the parties. *Castagna*

*v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218 (SDNY).

Where, as here, the parties resolve class action litigation through a class-wide settlement,

they must obtain the court's approval. Fed. R. Civ P. 23(e). Review of a proposed class action

settlement generally occurs in two steps. In the first instance, "[t]he judge should make a

preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at

least one of the subsections of Rule 23(b)." *Manual for Complex Litigation* (Fourth) § 21.632

(2004) Additionally, "[t]he judge must make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

the certification, proposed settlement, and date of the final fairness hearing." *id.* If the proposed

settlement falls "within the range of possible approval," the Court should grant preliminary

approval and authorize the parties to give notice of the proposed settlement to the class members.

*Yuzary v. HSBC Bank USA, N.A,* 2013 U.S. Dist. LEXIS 61643 (SDNY). Stated another way,

preliminary approval is a "determination that there is what might be termed 'probable cause' to

submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re*

*Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

Here, the Court has preliminarily approved the settlement [Doc. 21]. The parties submit that

following the hearing, final approval of the settlement is warranted.

## A. A Review of the Applicable Factors Favors Approval of the Settlement

At the final-approval stage, the Court should review the settlement for fairness, reasonableness,

and adequacy. *Teachers' Ret. Sys. v. A.C.L.N., Ltd.,* 2004 U.S. Dist. LEXIS 8608 (SDNY 2004)

In determining whether a settlement is "fair, adequate and reasonable," the Second Circuit has

instructed that a court should consider the following factors:

(1) the complexity, expense and likely duration of the litigation . . .; (2) the reaction of the class

to the settlement . . . .; (3) the stage of the proceedings and the amount of discovery completed . .

.; (4) the risks of establishing liability . . .; (5) the risks of establishing damages . . .; (6) the risks

of maintaining the class action through the trial . . .; (7) the ability of the defendants to withstand

a greater judgment . . .; (8) the range of reasonableness of the settlement fund in light of the best

possible recovery . . .; [and] (9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation . . ...

*Id.*

Because the Settlement Agreement here far exceeds the threshold regarding fairness, reasonableness and adequacy, the Court should order final approval of this class action settlement.

A. *The Complexity, Expense and Likely Duration of the Litigation*

These factors weigh in favor of approval of the settlement. Class action litigation in Federal Court is inherently complex, expensive and time-consuming. The parties have engaged in informal discovery. Plaintiff has had adequate access to information to evaluate the merits of the case and weigh settlement against further litigation. Further, litigation and trial would be costly and absorb substantial judicial and other resources.

B. *The Reaction of the Class to the Settlement*

This factor weighs heavily in favor of final approval of the settlement. Following the newspaper notice, the internet notice and notice on the ATM itself, no objections have been made to the settlement. There were no opt outs either. Accordingly, the settlement should be approved.

C. *The Stage of the Proceedings and the Amount of Discovery Completed*

To approve a proposed settlement "the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)). "Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement." *Holocaust Litig., Id.*

The parties engaged in ample discovery to meet the above threshold. Prior to executing the Stipulation, Lead Counsel investigated the events and transactions alleged in the Complaint, and considered the strength of the Defendant's possible affirmative defenses that the

fee notice was removed by a third party or that the fee notice was not posted due to a bona fide error notwithstanding the maintenance of procedures designed to prevent such an error. Thus the parties "have a clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).

D. *The Risks of Establishing Liability, Damages, and in Maintaining the Class Action Through the Trial*

*Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974) holds that in assessing the fairness, reasonableness, and adequacy of asettlement, courts should consider such factors as the "risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action throughout the trial." *Grinnell*, 495 F.2d at 463. Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation. Indeed, certain Courts have denied class certification motions in EFTA Fee Notice cases. *Kinder v. First S. Nat'l Bank,* 2011 U.S. Dist. LEXIS 137712, *Kinder v. Forcht Bank,* 2011 U.S. Dist. LEXIS 137707

The Plaintiff Class also faced significant risks in establishing damages. The section on damages in the Electronic Funds Transfer Act 15 USC 1693m states:

(a) **Individual or class action for damages; amount of award**

Except as otherwise provided by this section and section <u>1693h</u> of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section <u>1693f</u> of this title, is liable to such consumer in an amount equal to the sum of—
(1) any actual damage sustained by such consumer as a result of such failure;
(2)
(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or
(B) in the case of a class action, such amount as the court may allow, except that

(i) as to each member of the class no minimum recovery shall be applicable, and
(ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and
(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.
**(b) Factors determining amount of award**
In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—
(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional; or
(2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of the defendant, the number of persons adversely affected, and the extent to which the noncompliance was intentional.

In this case, there is no evidence that the noncompliance was frequent or persistent nor was it intentional. According to Defendant's records 170 individual's rights were violated. Each class member had the opportunity to submit a claim form and receive a pro rata share of $1,000. This is the maximum amount of damages available.

E. *The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation*

In order to calculate the "best possible" recovery, the Court must assume complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the Action. Courts agree that "reasonableness is not a standard susceptible to a mathematical equation yielding a sum certain." *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. at 130. Rather, there is "a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). "That a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

"There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2.

The proposed Settlement provided for payment to Class members within mere months of filing, not some speculative payment of a hypothetically larger amount years down the road. Class members were to receive the maximum amount of damages in the range of $100-$1,000 available of $1,000 if they submitted a valid claim form. "Much of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987). Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness.

In short, if the parties did not agree to settle this case, the class certification process, motions briefing and trial would be lengthy, expensive and pose risks to both sides. The proposed settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of causing the posting of ATM fee disclosure notice. This result will be accomplished at least months, and perhaps years, earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the claims in dispute benefits the Class, specifically, and consumers, generally, and should be finally approved.

**V.**

**THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

**A. The Proposed Class Meets the Requirements For Certification Of A Settlement Class**

To proceed as a class action, the class must satisfy the four prerequisites of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – as well as at least one of

the three requirements of Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591 In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* Here the proposed class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3). Therefore, the parties now request that the Court finally certify the proposed class.

## B. The Requirements Of Rule 23(a) Are Met

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue or be sued as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. The settlement meets the requirements for class certification under Rule 23:

1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. There are 170 Class Members, easily satisfying this requirement. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) (when the class comprises 40 or more members, the numerosity requirement is satisfied).

2. Commonality

The commonality requirement of Rule 23(a)(2) is met if plaintiffs' grievances share a common question of law or of fact. *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997). Plaintiff contends that there are common questions of law or fact affecting the class, and that these questions include but are not limited to:

a. whether Defendant violated the EFTA;

b. whether Defendant was the operator of the ATM that Plaintiff used;

c. whether Plaintiff and the other Class Members are entitled to recover statutory damages and, if so, in what amount; and

d. whether Plaintiff and the other Class Members are entitled to recover attorney's fees and, if so, in what amount.

3. Typicality

    "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931 (2nd Cir. 1993). For purposes of this settlement, the Parties have previously stipulated that Plaintiff's claims are typical of the claims of the class. Plaintiff alleges that he and the Class Members made an electronic funds transfer from the automated teller machine operated by the Defendant but were not given notice of the fee by means of a notice posted on or at the machine in a "prominent and conspicuous location."

    Plaintiff contends that his rights were violated under the EFTA.

4. Adequacy of Representation

Adequacy of representation consists of two prongs: (1) that the representative party's attorneys are qualified, experienced and generally able to conduct the litigation; and (2) that the suit is not collusive and plaintiff's interest is not antagonistic to the class.

The adequacy of the class plaintiff inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). "Plaintiffs must also have attorneys who are "qualified, experienced, and generally able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

The parties maintain that the plaintiff has no conflicts of interest with the class members and the interests of named plaintiffs are commensurate with those of the class members. The parties do not foresee a conflict between named plaintiffs and the remainder of the class. Further, plaintiffs' counsel is experienced and knowledgeable in this area of law as he devotes his entire practice to consumer law and consumer class actions and is able to protect the interests of members of the class properly. Therefore, the Court should find that the plaintiff and his chosen counsel can adequately represent the interests of the class members.

## C. The Requirements Of Rule 23(b) Are Met

## 1. Common questions of law and/or fact predominate over questions affecting individual class members

Pursuant to Rule 23 an action may be maintained as a class action if the four elements described above are satisfied, and in addition, the Court finds, pursuant to Rule 23(b)(3), that the

prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant, or that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiff alleges that the causes of action forming the basis of the class claims in this case are such that the prosecution of separate actions by individual members of the class would create the risk of establishing incompatible standards of conduct for Defendant.

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct. These allegations provide the common issues required to ensure predomination of common questions over individual issues. Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's noncompliance with the ATM fee disclosure requirements of EFTA.

**2. A class action is the superior means to adjudicate the claims at issue**

The Court's final consideration in applying Rule 23(b)(3) is whether a class action is the superior method for adjudicating the case. Rule 23(b)(3) lists the factors pertinent to the superiority determination as follows:

(A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action. Fed.R.Civ.P. 23(b)(3).

All four of these factors support certification here for settlement purposes.

### a. Most class members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). In *Amchem Prods. v. Windsor*, 521 U.S. 591, the Supreme Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
>
> Effective private enforcement requires mechanisms to aggregate these relatively small

but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery. Class litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful, and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant on behalf of ATM users meets this test. The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155  The

claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of Class Members.

**b. The extent and nature of any other litigation commenced by class members**

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

**c. This Court is an appropriate forum for resolution of the claims in dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797

**d. Manageability**

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. Therefore, the Court need not consider manageability as part of its settlement approval analysis.

**VII.**

**CONCLUSION**

For all of the foregoing reasons, the Parties respectfully request that the Court  grant final approval of the proposed class action settlement.

Dated 5/28/13  New York, NY

Respectfully submitted,

Shimshon Wexler